KAREN P. HEWITT
United States Attorney
ROBERT CIAFFA
Assistant United States Attorney
California State Bar No. 179432
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7045
Robert.Ciaffa@usdoj.gov

Attorneys for Respondent
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KARIN ELENA CAUSBIE GULLERS, | ) | Case No.    07-CV-2368-JM |
| | ) | |
| | ) | [Case Below: 06-MG-1674-AJB] |
| Petitioner, | ) | |
| | ) | **GOVERNMENT'S RESPONSE AND** |
| v. | ) | **OPPOSITION TO PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS** |
| RAUL BEJARANO, U.S. Marshal, | ) | |
| Southern District of California, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

COMES NOW the respondent, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Robert Ciaffa, Assistant United States Attorney, and files this response and opposition to petitioner's motion for a writ of habeas corpus. This response and opposition is based upon the files and records of the underlying case cited above and the applicable law as set forth herein.

I.    BACKGROUND AND PROCEDURAL HISTORY

This is the second of two extradition cases in which petitioner seeks habeas review by this court. In the first case, the Government of Mexico requested petitioner's extradition to face criminal fraud charges filed against her in Mexico's Case No. 560/2002-A. Petitioner was found extraditable by U.S. Magistrate Judge Anthony J. Battaglia on July 21, 2006 (Case No. 06-MG-0603-AJB), and this court denied her petition for a writ of habeas corpus by written order dated January 8, 2007 (Case No. 06-CV-1659-JM). That case is currently on appeal before the Ninth Circuit (Case No. 07-55137).

In this case, the Government of Mexico requested petitioner's extradition to face criminal fraud charges filed against her in two additional cases (Mexico's Case Nos. 526/2001-C and Case No. 177/2002-A). The facts underlying these two cases are almost identical to the facts underlying the other Mexican case for which petitioner has been found extraditable, that is, that petitioner participated in an investment scheme to defraud elderly American and Canadian retirees living in Mexico. Petitioner and her co-defendants induced the victims to invest thousands of dollars in a nonexistent bank, promised them ridiculously high rates of return, and fled the country leaving the victims without recourse.

A.  Mexico's Case No. 526/2001-C

As found by the Second District Court in Jalisco, Mexico, in its lengthy opinion containing findings of fact and conclusions of law, dated November 28, 2001 (Exhibit 13),[1] the evidence in this case demonstrates that petitioner was part of an investment fraud scheme designed to cheat Elizabeth Arambula Diaz De Jantzi and her husband, Gordon Jerry Jantzi Lobsinger, out of $39,000 dollars. Specifically, the court found sufficient evidence, and granted the prosecutor's request, to proceed against petitioner for the crime of "Fraud," but found insufficient evidence, and denied the prosecutor's request, to proceed against petitioner for the offense of "Crimes Related to the Pecuniary Ability of the People Subject to Bankruptcy Proceedings." At the end of its opinion, the Court issued a warrant for petitioner's arrest.

As set forth in Criminal Accusation, sworn to by the victims on May 24, 2000 (Exhibit 9) , the victims' ratification of their complaints on May 30, 2000 (Exhibits 2 & 3), the statements of witnesses (Exhibits 4, 5 & 6), and the accompanying documentary evidence (Exhibits 10, 11 & 12), the scam involved promising the victims twenty percent interest in the second month, followed by ten percent interest in each of the following ten months, if they invested $39,000 dollars in First Global Bank, Inc. (hereinafter, "FGB"). The first investment was for $14,000 and made on January 20, 1999; the second investment was for $25,000 and made on March 15, 1999 (Exhibits 10 &11).

---

[1]  Exhibit numbers correspond to the exhibits attached to the request for extradition in each Mexican case.

After the victims deposited the money in FGB, they were paid interest for one month. The principal was never returned, nor were any additional interest payments made on the $39,000 investment. Later in 1999, petitioner held a reunion for the investors. The main objective of this reunion was to assure the victims they would have their money returned. Petitioner told the victims that there had been a mistake and that both their original investment and interest earned up until September 1999 would be paid (Exhibit 3).

Later, petitioner and her sister sent the victims several promises via fax to further lull the victims into believing they would get their money back (Exhibit 3). Mr. Jantzi was subsequently contacted by fax from a private investigator from California who portrayed himself as acting on behalf of petitioner. Some time after the initial contact, the investigator told the victim that he was no longer continuing his investigation because the money owed to the victims was going to be returned. It never was (Exhibit 3).

B.    Mexico's Case No. 177-2002-A

In this case, as before, the Second District Court in Jalisco, Mexico, filed a lengthy opinion containing findings of fact and conclusions of law, dated May 9, 2002 (Exhibit 28), containing ample evidence that petitioner was part of an investment fraud scheme designed to cheat the following vulnerable victims: Bernard Everet Addy, Lesley White, John A. White, Bruce Corkill, Eileen Emily Corkill, Geofrey Ward, Alan Fehr, George Lang Wilson Stevenson, Heather Stevenson, Fred Chayko and Gordon Frame. At the end of its opinion, the Court issued a warrant for petitioner's arrest.

As set forth in detail in the victims' statements (Exhibits 6, 7, 9, 15, 17, 20, 22, 24 & 26) and accompanying documentary evidence (Exhibits 10, 16, 19, 21, 23, 25 & 27), the scam involved promising victims large rates of return for their investment in FGB. Petitioner and her co-defendants induced the victims to wire transfer large sums of U.S. dollars, usually to a New York bank, for credit to an account in the name of "Nepenthe, Ltd." held by The Royal Bank of Scotland, Ltd., in Nassau, Bahamas. (Exhibits 10, 16, 19, 21, 23, 25 & 27). The victims sent their money as instructed. The total loss of principal alone was $231,000. A schedule showing the victims' investments and their complaints is set forth below:

3

| | | | |
|---|---|---|---|
| Mr. & Mrs. White | $30,000 | March 20, 1999 | Exh 6, 7 (Compl. 11/16/01) |
| Bernard Everet Addy | $10,000 $25,000 $50,000 | October 21, 1998 November 12, 1998 March 18, 1999 | Exh 9 (Compl. 5/24/00) |
| Mr. & Mrs. Corkill | $14,000 | January 20, 1999 | Exh 15 (Compl. 5/24/00) |
| Geofrey Ward | $25,000 | February 11, 1999 | Exh 17 (Compl. 10/24/01) |
| Alan Fehr | $10,000 | November 14, 1998 | Exh 20 (Compl. 10/25/01) |
| Mr. & Mrs. Stevenson | $25,000 | August 11, 1999 | Exh 22 (Compl. 10/26/01) |
| Fred Smuk | $10,000 $10,000 | January 11, 2000 February 3, 2000 | Exh 24 (Compl. 10/19/01) |
| Gordon Frame | $10,000 $12,000 | November 1998 April 1999 | Exh 26 (Compl. 11/1/01) |
| Total | $231,000 | | |

Petitioner personally participated in all stages of the scheme and had direct contact with the victims. For example, according to witness Antonio Aceves Prez Says Perez, on or around April 1999 an "investor" meeting was held to solicit investments in FGB (Exhibit 4). Mr. Perez was asked to attend the meeting by victim Bernard Everet Addy. Mr. Perez saw petitioner at the meeting. During the investor meeting the victims were explained the details of the investment. Then the investment details were  outlined in a Participation agreement, placed on FGB stationary and signed by each victim (Exhibits 10, 16, 19, 21, 23, 25 & 27). Petitioner and her co-defendants, present together at the meeting, successfully induced the victims to transfer thousands of dollars into FGB. A letter signed by the National Banking Commission establishes that FGB does not exist (Exhibit 12). Documentation of the wire transfer requests by each victim and confirmation of the money being received  by FGB can be found for each victim in Exhibits 10, 16, 19, 21, 23, 25, 27.

On September 3, 1999, after investments had been made by many of the victims, petitioner, listing herself as "Director," sent a letter to "Our FGB Clients," in which she

4

1    explained that the company guaranteeing the victims' investments had changed (Exhibit 10, 19).

2    In or around December 1999, petitioner contacted the victims to seek their attendance at an

3    investor reunion.  At the reunion, petitioner informed those victims in attendance that a problem

4    had occurred with the investment fund and that their money and all earned interest would be

5    returned.  After this meeting petitioner portrayed herself to the victims as the acting Director of

6    FGB (Exhibit 17, 20, 24).  Petitioner's involvement in this meeting is corroborated by numerous

7    victim statements (Exhibits 3, 4, 6, 7, 9, 15, 17, 20, 22).  Petitioner also sent a fax dated February

8    2, 2000, to notify the victims she was moving out of the area (Exhibit 19, 25).  Not one victim

9    ever received any return of his of her principal investment.

10           C.     The Proceedings Below

11         On September 7, 2006, the United States filed a complaint for extradition pursuant to the

12    request made by Mexico under the treaty (Case No. 06-MG-1674-AJB).  Attached to the

13    complaint, the United States filed Mexico's formal request for extradition, made to the U.S.

14    Department of State and supported by appropriate documents (copy of diplomatic note, without

15    exhibits, attached).  Petitioner was already in U.S. custody awaiting extradition on the first case,

16    and made her initial appearance on this complaint on September 8, 2006.

17         The United States filed a memorandum of law in support of Mexico's request for

18    extradition, and petitioner filed a brief opposing Mexico's request.  On December 1, 2006, a

19    hearing was held before Magistrate Judge Battaglia.  On December 15, 2006, Magistrate Judge

20    Battaglia filed a written order overruling petitioner's objections and certifying her to the

21    Secretary of State for extradition to Mexico to face the charges in the two additional cases as

22    requested.  Findings of Fact, Conclusions of Law and Certification of Extraditability, copy

23    attached.  Over one year later, on December 18, 2007, petitioner filed the instant motion for

24    habeas relief.

25           II.     THE INSTANT PETITION

26         Petitioner argues that the magistrate judge erred in rejecting her claim that the prosecution

27    is barred by lapse of time, in violation of Article 7 of the Extradition Treaty.  Specifically,

28    petitioner claims that she is not extraditable because the statute of limitations, under both

1  Mexican and United States law, has run.  This claim has been rejected by the magistrate judge

2  in this case (Case No. 06-MG-1674-AJB) and the previous case (Case No. 06-MG-0603-AJB),

3  and by this court in its habeas review of the previous case (Case No. 06-CV-1659).

4          III.    STANDARD OF REVIEW

5          Petitioner correctly recognizes that a magistrate judge's order of extraditability is not

6  directly appealable, Collins v. Miller, 252 U.S. 364, 369-70 (1920);  Hooker v. Klein, 573 F.2d

7  1360, 1364 (9th Cir. 1978), and that review by this court, on a petition for a writ of habeas

8  corpus, is limited to:

9           whether the magistrate had jurisdiction, whether the offense charged is within the
            treaty and, by a somewhat liberal extension, whether there was any evidence
10          warranting the finding that there was reasonable ground to believe the accused
            guilty.

11

12  Quinn v. Robinson, 783 F.2d 776, 790 (9th Cir. 1986), quoting Fernandez v. Phillips, 268 U.S.

13  311, 312 (1925).

14          Purely legal questions are reviewed de novo by the habeas court, while purely factual

15  questions are reviewed under the "clearly erroneous" standard.  Quinn v. Robinson, 783 F.2d

16  at 791.   The review of mixed questions of law and fact, that is, the application of law to fact,

17  depends on whether the determination is "essentially factual," in which case it is reviewed under

18  the clearly erroneous standard, or "whether it requires the court to consider legal concepts in the

19  mix of fact and law and to exercise judgment about values that animate legal principles," in

20  which case it is reviewed de novo.  Id. citing United States v. McConney, 728 F.2d 1195, 1199-

21  1204 (9th Cir. 1984) (en banc).

22          Finally, a magistrate judge's finding of probable cause, while "not a finding of fact in the

23  sense that the court has weighed the evidence and resolved disputed factual issues," must be

24  upheld if there is any competent evidence in the record to support it.  Id., citing Caplan v. Vokes,

25  649 F.2d 1336, 1342 (9th Cir. 1981).

26          IV.    LEGAL ANALYSIS

27          Petitioner's claim centers on Article 7 of the Extradition Treaty between the United States

28  and Mexico, which requires that the prosecution of the offense for which extradition is sought

1    be not "barred by lapse of time according to the laws of the requesting or requested party" (copy

2    of Extradition Treaty, attached).  In other words, as both parties agree, the prosecution must fall

3    within the statute of limitations, according to the laws of both Mexico and the United States.

4    Here, Article 7 has not been violated.

5        A.        The Prosecution is Not Barred by Lapse of Time Under Mexican Law.

6        The evidence submitted by Mexican authorities in support of the request for extradition

7    demonstrates that the prosecution is well within the statute of limitations under Mexican law,

8    as the magistrate judge so found.  Regarding Mexico's Case No. 526/2001-C, the extradition

9    request contains a certification, dated January 30, 2002, by the  Clerk of the Criminal Court in

10   which the charges are pending in Mexico, who states:

11        That up to date the criminal action against . . . KARIN WATTERWALD and/or
         CAUSBIE GULLERS . . . has not prescribed, since was decreed for them Arrest
12       Warrant for the crime of FRAUD . . .

13   (Exhibit 14, copy attached).    As further set forth in his certification, the Clerk of the Court

14   explained that under Mexican law, the statute of limitations for prosecuting this offense is based

15   on the arithmetical mean of the minimum and maximum penalty (7 years), plus one-fourth of the

16   mean (1 year, 9 months), which

17        gives as result for the prescription to operate 8 eight years, 9 nine months, which
         up to date has not elapsed being valid the Arrest Warrant issued  . . . .
18

19   Id.  The extradition request also contained a similar certification, dated May 17, 2002, by the

20   Clerk of the Court concerning Mexico's Case No. 177/2002-A. (Exhibit 29, copy attached).[2/]

21       The calculations contained in the certifications correspond precisely to the provisions of

22   Mexican law provided by Mexican authorities in the request for extradition, specifically, Chapter

23   VIII of the Criminal Code of the State of Jalisco, entitled, "Statute of Limitations of the Criminal

24   Action," which contains the following provisions, among others:

25

26       [2/]    Since the legal issues in this case mirrored those raised in the previous extradition case, the
     parties adopted their positions made in the earlier case.  As a probable consequence, the Magistrate
27   Judge's Order incorrectly cited the February 26, 2003 certification from the Mexican Court in the
     previous extradition case, instead of the two certifications from the Mexican Court in this case.
28   Findings of Fact, Conclusions of Law and Certification of Extraditability, p. 11.  This error is harmless,
     as the information contained therein, and their legal effect, is the same--that the statute of limitations
     is 8 years and 9 months, and that it has not expired.

1
2
3

Article 82.  The criminal action shall prescribe in a term which is equal to mathematical mean of the minimum and maximum imprisonment penalty which corresponds to the crime; the statute of limitations shall be increased in a fourth part more than such term; . . . .

4
5

Article 85.  The statute of limitations of the criminal action shall never be less than three years, three months, and it shall only be interrupted by the arrest of the defendant.

6

(Exhibit 1, copy attached).

7   Petitioner concedes that the statute of limitations "for the criminal action itself" is, in this

8   case, 8 years and 9 months, but claims that the provision covering the prosecution of the offense

9   "is not implicated" in her opposition (Pet. at p. 11, fn. 10).  Instead, she asks this court, in

10  essence, to ignore the relevant statutory provisions and the certification by the Clerk of the Court

11  concerning the prosecution of the offense, and to focus on when the victims filed their

12  complaints.

13  This claim was properly rejected.  First, it ignores the operative provisions of Mexican

14  law which control the statute of limitations <u>for the prosecution of the offense</u> and which were

15  applied by the Clerk of the Court in his certifications on this very issue.  Both properly construe

16  Chapter VIII of the Mexican Criminal Code entitled, "Statute of Limitations of the Criminal

17  Action," which, on its face, clearly governs the prosecution of the offense.

18  Second, petitioner's argument is premised on a different provision of Mexican law,

19  namely Chapter VII, "Statute of Limitations of the Right to File a Complaint," which does not

20  concern the prosecution of the offense, but rather, a victim's right to file a complaint:

21
22
23
24

Art. 80.  The right of the victim to complain of a crime, whether the crime be continuous or not, that may only be initiated by the complaint, shall prescribe in one year counted from the day the persons authorized to file the complaint have knowledge of the crime and the offender, and in three years if the above requirement is not satisfied, but the complaint has been presented, the remaining rules, set forth by this Code shall be applicable to those crimes that are prosecuted "ex-officio."

25  (Exhibit 1).[3]

26

27
28

_____

[3]   In the court below, petitioner submitted a letter from an attorney in Mexico stating that Chapter VII's statute of limitations for a victim to file a complaint had been reduced to 6 months. Because the magistrate judge determined that Chapter VII was inapplicable to the question before the court, he never reached, and made no findings concerning: a) whether that provision of Mexican law

(continued...)

1    The magistrate judge found that the Mexican court's certification of its own statute of

2    limitations, containing detailed explanations and references to Chapter VIII, "Statute of

3    Limitations of the Criminal Action," is determinative.  Indeed, Causbie's novel argument, that

4    the United States can contradict a treaty partner's determination of its own law, has not been

5    adopted by any court.  See Kamrin v. United States, 725 F.2d 1225, 1227 (9th Cir. 1984) (absent

6    provision requiring consideration of United States statutes of limitations, issue of requesting

7    state's statute may be raised "only after return to the requesting state," where fugitive can raise

8    the defense and requesting state will "resolve the issue.").

9    Further, the magistrate judge made an affirmative finding, agreeing with the Government

10    that the provision cited by petitioner was irrelevant: "the statute of limitations for a victim to file

11    a complaint simply does not control under Article 7 of the Treaty." Findings of Fact,

12    Conclusions of Law and Certification of Extraditability, at p. 11.

13    This finding is further supported by the Mexican judge's decision in each case to validate

14    formal criminal proceedings and issue an arrest warrant for petitioner based on the victims'

15    complaints, which were included in the prosecutor's request and specifically referenced by the

16    judge.  Presumably, if the victims had filed their complaints too late, and if, under Mexican law,

17    that would have thwarted a criminal prosecution, then the court would not have initiated the

18    criminal proceedings or later certified (twice) in the requests for extradition that the statute of

19    limitations has not run in these cases.

20    Similarly, this court, when addressing this same claim in petitioner's previous habeas

21    case, emphasized that the Mexican legal provision relied upon by petitioner, which pertain to

22    when victims can file a complaint, are "irrelevant" to the statute of limitations provision of the

23    Extradition Treaty, which is specifically concerned with the prosecution of the offense:

24

25    ³/(...continued)

26    had, in fact, changed; b) whether such change was retroactive to this case; c) when the victims in this
      case had "knowledge of the crime and the offender" thus triggering the time period; d) whether this

27    crime could be prosecuted "ex-officio;" or, e) whether Chapter VII superseded Chapter VIII for
      purposes of prosecution of the offense.  Findings of Fact, Conclusions of Law and Certification of

28    Extraditability, at p. 11, fn. 8 ("Respondent further states that it is their belief, according to Mexican
      counsel Jorge Robles, that Article 80 has  been amended and now has a limitation of six months and
      such amendments to Mexican criminal codes apply retroactively when they favor the accused.")
      (emphasis added).

1  |  Article 7 [of the Extradition Treaty] prohibits granting extradition when the
2  |  <u>prosecution</u> or the enforcement of the penalty for the offense is barred by the
   |  applicable statute of limitations. Chapter VIII clearly governs when prosecution
3  |  of a crime is barred by expiration of the limitations period. By contrast, Chapter
   |  VII merely provides the statute of limitations for the filing of a <u>victim's complaint</u>.
4  |  Here the Mexican government is prosecuting Petitioner for fraud. Therefore,
   |  Chapter VIII applies, not Chapter VII. To the extent Petitioner is arguing that the
5  |  victims' complaints were an invalid basis for issuance of the [arrest] Warrant
   |  because those complaints were barred by Chapter VII's limitations period, this
6  |  argument is irrelevant to the statute of limitations issue relative to the Mexican
   |  government's prosecution of Petitioner.

<u>Causbie Gullers v. Bejarano,</u> Case No. 06-CV–1659-JM, Order Denying Petition for Writ of Habeas Corpus, at p. 4.

Further, petitioner's analysis assumes several facts and legal theories, none of which are part of the record in this case, such as: a) whether the statute of limitations for victims to file complaints has any relevancy to the statute of limitations for prosecution of the offense; b) if so, whether the statute of limitations for victims' complaints in this case is one year, three years, or six months as petitioner contends; c) when the victims had "knowledge of the crime and the offender," thus allowing petitioner to calculate a date by which a complaint must be filed; and d) whether this crime "may only be initiated by the complaint" or is being prosecuted "ex-officio," which would apparently affect whether this provision applies at all. There is simply no evidence in this record, nor is there a need, for this court to make such findings, absent any evidence that Chapter VII is relevant to the inquiry under Article 7 of the Extradition Treaty.

In sum, Mexican authorities have satisfied the provisions of the Extradition Treaty, specifically, Article 7, concerning the statute of limitations for prosecution of the offense. The certifications from the Clerk of the Court, accompanied by the code provisions governing prosecution of the offense, all duly authenticated through the diplomatic channel, are all that is necessary to fulfill the requirements of the Treaty. Petitioner's assumption that another provision of Mexican law <u>may</u> apply to somehow bar her prosecution is unsupported by any evidence.

Mexico is simply not required to disprove every hypothesis conjured up by its fugitives to confuse foreign courts and avoid extradition. Since Mexico has produced admissible evidence

1   demonstrating that the statute of limitations for the prosecution of the offenses has not run,

2   Article 7 has not been violated.[4/]

3       B.   The Prosecution is Not Barred by Lapse of Time Under U.S. Law

4       Petitioner's argument concerning the statute of limitations under United States law is

5   equally unavailing.  United States law requires that, for most noncapital crimes, a person must

6   be charged within five years. 18 U.S.C. § 3282(a).  Thus, if petitioner committed the acts

7   underlying her fraudulent activity in the United States, criminal charges would have to be

8   brought within five years from the date the offense was committed.  Here, according to the

9   extradition request, the earliest acts underlying the fraud in Mexican Case No. 526/2001-C

10  occurred in January 1999, when victims Elizabeth Arambula Diaz De Jantzi and Gordon Jerry

11  Jantzi Lobsinger made their first investment of $14,000 (Exhibit 10).  Since the Mexican

12  authorities charged petitioner and issued a warrant for her arrest on November 28, 2001 (clearly

13  within five years of even the earliest fraudulent activity), then the prosecution does not offend

14  the statute of limitations under United States law.  Similarly, in Mexican Case No. 177-2002-A

15  , petitioner was charged and a warrant for her arrest was issued on May 9, 2002, within five

16  years of the earliest fraudulent activity occurring in October 1998, when victim Bernard Everet

17  Addy made his first investment of $10,000 (Exhibit 9).

18      Petitioner recognizes that the statute of limitations for the offense of fraud under United

19  States law is five years, and recognizes that the Mexican court issued an arrest warrant based on

20  the fraud charges within the five-year period following the offense.  Nevertheless, she argues

21  that her prosecution in the United States would be time-barred because a Mexican arrest warrant

22  is not an indictment as known to U.S. law (Pet. at p. 12, adopting arguments made in previous

23  habeas petition).   This argument is without basis, as the magistrate judge found.

24

25      [4/]   In the previous extradition case, at oral argument before the Ninth Circuit, the panel
    wondered whether the case should be remanded to the district court for legal and factual findings about
26  Chapter VII, including whether it affects the statute of limitations for prosecution of the offense and bars
    the prosecution in Mexico, whether the crime of fraud could be prosecuted "ex-officio" within the
27  meaning of Chapter VII, etc. Both parties opposed a remand.  Petitioner argued that Mexico should not
    get a second chance to prove its case, and the United States argued that although the treaty specifically
28  allows for the requesting party to supplement its request with further information, Mexico had
    sufficiently satisfied the requirements of the treaty in this case.  The United States still believes that no
    further testimony need be taken in light of the evidence already in the record, and petitioner's failure
    to produce evidence to the contrary.

11

1    As she did before the magistrate judge, petitioner is attempting to muddle the legal

2    analysis and transform this issue into an impermissible scrutiny of the Mexican legal system.

3    The relevant inquiry is a <u>temporal</u> one, that is, whether petitioner was charged by the foreign

4    authority within five years of the crime, and <u>not</u> whether the foreign charging document is the

5    same as a U.S. charging document or whether the foreign charging document would (or could)

6    have any legal effect under U.S. law.[5/]  Indeed, as conceded by petitioner, no court has adopted

7    her view that a U.S. court should pass judgment on a foreign country's charging instrument when

8    determining whether the offense would have been time-barred under United States law.

9    On the contrary, the Ninth Circuit and other federal Courts of Appeal have all properly

10   relied on the foreign country's charging instrument in determining whether charges have, in fact,

11   been brought within the statute of limitations.  <u>E.g.</u>, <u>Caplan v. Vokes</u>, 649 F.2d 1336, 1340 (9th

12   Cir. 1981) ("Measuring from the date of the London arrest warrant . . .");  <u>Restatement (Third)</u>

13   <u>of Foreign Relations Law § 476</u> (1987), comment (e) ("For purposes of applying statutes of

14   limitation to requests for extradition . . . the period is generally calculated from the time of the

15   alleged commission of the offense to the time of the warrant, arrest, indictment or similar step

16   in the requesting state . . .").

17   Petitioner adopts the arguments made in the previous habeas case (<u>Pet.</u> at p. 12).  Her

18   citation to <u>Quinn v. Robinson</u>, 783 F.2d 776 (9th Cir. 1986), does not support her claim that the

19   United States can require a U.S.-type "indictment" when considering whether the prosecution

20   of an offense by a foreign country would violate the U.S. statute of limitations.  In <u>Quinn</u>, the

21   issue before the court was the applicability of the "political offense" exception to the extradition

22   treaty between the United States and the United Kingdom.  Although Quinn made a statute of

23   limitations claim in the district court, that issue was not reached by the either the district court

24   or the court of appeals.  <u>Id.</u> at 814-817.  Consequently, <u>Quinn</u> is largely irrelevant, as the

25   magistrate judge so found.

26

27   _____

28   [5/]    Asking whether a particular foreign charging document could toll the U.S. statute of
limitations is comparing "apples to oranges," and thereby builds a faulty theoretical construct which can
never be satisfied.  A foreign charging document can never toll, or have any effect on, the U.S. statute
of limitations which governs U.S. prosecutions, not foreign ones.

Petitioner's suggestion that Mexico must institute criminal proceedings in the same way as the United States, that is, with an indictment, has not been adopted by any court and is beyond the scope of this court's limited inquiry when deciding whether the statute of limitations provision of the Treaty has been satisfied. See Emami v. U.S. District Court, 834 F.2d 1444, 1448-49 (9th Cir. 1987) (foreign arrest warrant for "investigation" sufficient even though petitioner not formally charged), citing In Re Assarsson, 635 F.2d 1237 (7th Cir. 1980) (same); Theron v. U.S. Marshal, 832 F.2d 492, 499-500 (9th Cir. 1987) (rejecting petitioner's challenge to foreign country's incorporation of earlier charges to satisfy statute of limitations; "inappropriate to engage in such an inquiry into the formal procedure a country uses in instituting prosecution"), abrogated on other grounds, 519 U.S. 482 (1997).

Since, in each of the two cases, Mexico instituted criminal proceedings within five years of the offense, the magistrate judge was correct in finding that the prosecutions would not be barred by lapse of time under United States law.

## V.     PETITIONER'S EVIDENCE IS INADMISSIBLE AND SHOULD BE STRICKEN

To the extent that petitioner again attempts to introduce inadmissible evidence (incorporating by reference "all exhibits and attachments") (Pet. at p. 5-6), such evidence should be stricken from the record.  In the case below, petitioner filed various documents, such as immigration forms, letters and tax records, bearing on her personal character, her children and her co-defendant husband.  Such evidence, although read by the magistrate judge, was properly not considered by him as it is inadmissible in an extradition proceeding, as this court found in the previous habeas case.  It should be stricken here as well.

A fugitive's grounds for opposing extradition are narrow.  Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978) ("participation by the fugitive at the extradition proceeding is limited").  For example, she may not introduce evidence which conflicts with the evidence submitted by the demanding state, Collins v. Loisel, 259 U.S. 309, 315-17 (1922); which establishes an alibi or a defense such as insanity, Charlton v. Kelly, 229 U.S. 447, 461 (1913), Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978); or which impeaches the credibility of the demanding country's witnesses, Matter of Extradition of Mainero, 990 F. Supp. 1208, 1218 (S.D.

13

1  Cal. 1997), citing <u>Collins v. Loisel</u>, 259 U.S. at 315-17 (1922), <u>In re Locatelli</u>, 468 F. Supp. 568
2  (S.D.N.Y. 1979).

3      Nor may a fugitive offer evidence that she had no motive to commit the crime. <u>Matter
4  of Extradition of Mainero</u>, 990 F. Supp. 1208, 1221 (S.D. Cal. 1997). Finally, a fugitive may
5  not argue that she did not flee the requesting country's jurisdiction and is not really a "fugitive."
6  Her mere presence in the United States renders her a fugitive subject to extradition. <u>Vardy v.
7  United States</u>, 529 F.2d 404, 407 (5th Cir. 1976); <u>In re Chan Kam-Shu</u>, 477 F.2d 333, 338-39
8  (5th Cir. 1973).

9      With respect to the underlying facts and the offenses for which she is wanted, a fugitive
10  is limited, within the discretion of the court, to introducing only explanatory evidence that
11  explains or clarifies the proof. <u>Hooker v. Klein</u>, 573 F.2d 1360, 1368 (9th Cir. 1978) (fugitive
12  "not permitted to introduce evidence on the issue of guilt or innocence"); <u>Eain v. Wilkes</u>, 641
13  F.2d 504, 511 (7th Cir. 1981) (properly rejecting fugitive's evidence that witnesses recanted their
14  statements). Hence, the court does not weigh conflicting evidence and determine what to credit,
15  "but, rather, determines only whether there is competent evidence to support the belief that the
16  accused has committed the charged offense." <u>Quinn v. Robinson</u>, 783 F.2d 776, 815 (9th Cir.
17  1986).

18      As Magistrate Judge Battaglia correctly found, the evidence submitted by petitioner is not
19  material to the extradition proceeding since it "does not negate the showing of probable cause"
20  and, consequently, was not weighed by the court. <u>Findings of Fact, Conclusions of Law and
21  Certification of Extraditability</u>, at p. 14. Similarly, this court properly refused to consider the
22  evidence in its habeas review of the previous case:

23      An extraditee is not permitted to introduce evidence on the issue of guilt or
        innocence. Accordingly, the court disregards these letters as they are not relevant
24      to the present petition.

25  <u>Causbie Gullers v. Bejarano,</u> Case No. 06-CV–1659, Order Denying Petition for Writ of Habeas
26  Corpus, at p. 10-11. Accordingly, petitioner's evidence should be stricken.

27

28

                                    14

1

VI.    CONCLUSION

2

For all the foregoing reasons, petitioner's request for a writ of habeas corpus must be

3

denied.

4

5    Dated: January 15, 2008                         Respectfully submitted,

6                                                     KAREN P. HEWITT
                                                      United States Attorney
7
                                                      /s/ Robert Ciaffa
8                                                     _____
9                                                     ROBERT CIAFFA
                                                      Assistant United States Attorney
10

11   Attachments:
            Diplomatic Note
12          Findings of Fact, Conclusions of Law and Certification of Extraditability
            Extradition Treaty
13          Mexican Certification dated Jan. 30, 2002
            Mexican Certification dated May 17, 2002
14          Mexican laws

15

16

17

18

19

20

21

22

23

24

25

26

27

28