cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE EXTRADITION OF: | ) ) | Civil No.06mg1674  (AJB) |
| KARIN ELENA CAUSBIE-GULLERS, aka Karin Watterwald, | ) ) ) | Findings of Fact, Conclusions of Law and Certification of Extraditability |
| Defendant. | ) ) ) | [Doc. No. 10] |

In the proceeding before this Court, the Republic of Mexico (hereinafter Mexico), through the United States government, seeks the extradition of United States citizen, KARIN ELENA CAUSBIE GULLERS, legally charged in two cases in Mexico (Case No. 526/2001-C and Case No. 177/2002-A). The matter proceeded to an extradition hearing on December 1, 2006 before the Honorable Anthony J. Battaglia, United States Magistrate Judge.  The interests of Mexico were represented by the United States through the United States Department of Justice, by Assistant United States Attorney Robert Ciaffa.   KARIN ELENA CAUSBIE-GULLERS was represented by Steven L. Barth of the Federal Defenders.  An Opposition to the Request for Extradition was filed by the Defendant on November 20, 2006. The court, for reasons explained below, GRANTS the petition, finding the Defendant extraditable.

### *Background*

KARIN ELENA CAUSBIE-GULLERS (hereinafter "Gullers" or "Defendant")[1] is accused by Mexico of having been involved with or committing various crimes in violation of Mexican laws.

---

[1] Gullers was identified or described at various times and by different persons or in documentary evidence with nicknames or aliases.  Ms. Gullers was also know as Karin Watterwald.

06mg1674

Pursuant to an extradition treaty between Mexico and the United States ("Treaty"),[2] and under federal laws supplementing and implementing such treaties, 18 U.S.C. 3184, *et seq*., the United States originally issued an arrest warrant for the Defendant, signed by Magistrate Judge Babara L Major on March 24, 2006 in USDC Case No. 06mg603.  The U.S. arrest warrant  issued on a Complaint for Extradition, filed by the United States Attorney on March 27, 2006, charging Defendant with violation of articles 250 and 251 (fraud) of the Penal Code of the State of Jalisco, Mexico. Defendant was arrested on March 27, 2006 and was ordered held without bail pending further proceedings.  The Defendant remains in U.S. custody awaiting extradition on these matters.

The parties seek to incorporate by reference the legal arguments presented and addressed by the Court in the prior extradition case against the Defendant (06mg0603-AJB), because that case is nearly identical, both factual and legally to the instant case.

On September 7, 2006, the US attorney filed a Complaint for Extradition alleging the same fraud scheme as that charged in the previous extradition case against additional victims. The Defendant made her initial appearance on September 8, 2006. This new complaint is based on warrants for the Defendant's arrest which were issued by the Second Judicial District Criminal Judge in Chapala, Jalisco dated November 28, 2001 (in Case No. 526/2001-C) and May 9, 2002 (in Case No. 177/2002-A).  The Mexican arrest warrants were the result of a petition based upon complaints filed by an additional 2 alleged victims.[3]

///
///
///
///
///
///

---

[2] The extradition treaty between the United States and Mexico was signed in Mexico City on May 4, 1978, and entered into force on January 25, 1980.  It is reported in "U.S. Treaties" at 31 U.S.T. 5059.  For the court's convenience, a copy of the treaty was attached to the complaint filed in this case. Treaty 31 UST 5059, TIAS 9656.

[3] These are the complaints lodged by Elizabeth Arambula and Gordon Jantzi (Exh. 9 to the diplomatic note).

06mg1674

### *Discussion*

#### *I. Description of the Alleged Offense and Involvement of Defendant*

The diplomatic notes and the supporting documents provided by the Mexican government seek extradition of the fugitive and her co-defendants for acts which constitute the Mexican crime of "fraud."[4] As was charged in the previous extradition case, it is alleged that the Defendant was part of an elaborate investment fraud scheme designed to cheat several vulnerable victims and their family members out of thousands of dollars.

As set forth in detail in the findings of fact and conclusions of law by the Second District Court in Jalisco, Mexico dated November 28, 2001 (in Case No. 526/2001-C) and May 9, 2002 (in Case No. 177/2002-A), respectively, the alleged scheme involved promising the victims large rates of return for their investment in First Global Bank, Inc., (hereinafter, "FGB").  The Defendant and her co-defendants induced the victims to wire transfer large sums of U.S. dollars, usually to a New York bank, for credit to an account in the name of "Nepenthe, Ltd." held by the Royal Bank of Scotland, Ltd., in Nassau, Bahamas.  The victims sent their money as instructed, and lost thousands of dollars.  It is alleged that the Defendant personally participated in several parts of the scheme, convincing the victims to invest their money in an outlandish plan, lulling the victims to have patience (or worse, to invest more money) when the promised returns did not materialize, and finally, after her husband's arrest and deportation, disappearing to her current residence in Sweden.

#### *II. Treaty Requirements and Necessary Documentation*

Under Article 10 of the Treaty, the request for extradition is required to contain the description of the offense for which extradition is requested and shall be accompanied by:

    (1)    A statement of the facts of the case;

    (2)    The text of the legal provisions describing the essential elements of the offense;

---

[4] According to Article 2, paragraph 1, of the Treaty, acts are extraditable if they fall within any of the clauses listed in the Appendix and are punishable in both the United States and Mexico by imprisonment for one year or more.  Additionally, according to Article 2, paragraph 3, acts are extraditable even if they are not listed in the Appendix, so long as they are punishable in both countries by imprisonment for one year or more. In the instant case, such acts are extraditable under either, or both, paragraphs 1 and/or 3 Attorney-Adviser Keller statement in his Declaration, "the acts for which extradition is sought are punishable in accordance with the laws of both contracting parties . . . and are covered under Article 2 of the 1978 Treaty and by the Appendix to the Treaty".

06mg1674

(3)     The text of the legal provisions describing the punishment for the offense;

(4)     The text of the legal provisions relating to the time limit on the prosecution of the offense; and,

(5)     The facts and the personal information of the person sought which will permit his identification and, where possible, information concerning his location;

(6)     A certified copy of the warrant of arrest issued by the judge or judicial officer [in Mexico]; and,

(7)     Evidence which, in accordance with the laws of the requested party, would justify the apprehension and commitment for the trial of the person sought if the offense had been committed there, (i.e., probable cause).[5]

Respondent does not dispute that the Treaty requirements have been met with regard to these items absent the following exceptions.  As to item 2, the elements of the offense, Respondent argues that the requirement of dual criminality is not met. As to item 4, the applicable statute of limitations, Respondent contends that the Mexican authorities failed to bring the charges in a timely manner.  As to item 6, the foreign arrest warrant, the Respondent argues that the warrant, as well as the allegations contained within the complaint, were unsworn and therefore do not satisfy the Constitutional require-ments of the Forth Amendment.  As to item 7, the sufficiency of the evidence, Respondent contends that the probable cause element has not been met and, therefore, there is no justification for her apprehension and commitment for extradition to Mexico.  Additionally, the Respondent makes other Constitutional challenges to the extradition request, which will be subsequently addressed.

///

///

---

[5] Under Article 10(7) of the Treaty, the probable cause determination is to be made in accordance with the laws of requested party (here, the United States).  Under United States law, the standard of probable cause is whether there is any evidence warranting the finding that there was reasonable ground to believe the accused guilty. *Fernandez v. Philips*, 268 U.S. 311 (1925); the probable cause is sustained if competent evidence to establish reasonable grounds is presented, not necessarily evidence competent to convict. *Collins v. Loisel*, 259 U.S. 309, 317 (1922).  If the drafters of the Treaty had intended the judicial officer to consider the admissibility and weight of the evidence under the law of the requesting party (i.e. Mexico), they could have easily added that provision. *In the Matter of the Extradition of Lui Kin Hong*, 939 F. Supp. 934 (D. Mass. 1996).  Further, it is not the responsibility of this Court to assess the probability that the requesting party will be able to secure a conviction. *Id.* at 592.

***III. Nature of Hearing and Requisite Elements for Extradition***

Title 18, United States Code, Section 3184, governs the judicial function in an extradition proceeding.  It requires that the Court hold a hearing to consider "the evidence of criminality" provided by the requesting State.  If the Court "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention," it must certify that finding to the Secretary of State for her decision on whether to surrender the fugitive. 18 U.S.C. § 3184.

Under 18 U.S.C. §3184, *et seq*., in order to extradite the Respondent, the United States, on behalf of the Republic of Mexico, must establish that:

(1)     The judicial officer is authorized to conduct extradition proceedings;

(2)     The court has jurisdiction over the respondent;

(3)     The applicable treaty is in full force and effect;

(4)     The crimes for which surrender is sought are included within the terms of the treaty; and,

(5)     There is probable cause that a crime or crimes were committed and that the Respondent participated in or committed them. *Bingham v. Bradley*, 241 U.S. 511 (1916);  *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. U.S.*, 729 F.2d 624 (9th Cir. 1980).

If the Court determines that all the requisite elements have been met, the findings are incorporated into a certificate of extraditability.  A finding that a fugitive is extraditable is not directly appealable, and a fugitive seeking review must file for a writ of habeas corpus with the district court. *Collins v. Miller*, 252 U.S. 364, 369-70 (1920); *Hooker v. Klein*, 573 F.2d 1360, 1364 (9th Cir. 1978). A finding that a fugitive is not extraditable results only in dismissal of the pending complaint, which can be immediately re-filed.  *Hooker v. Klein*, 573 F.2d at 1366 (An extradition request can be re-filed even where denied on merits or on procedural grounds; *United States v. Doherty*, 786 F.2d 491 (2nd Cir. 1986).  The certificate is forwarded to the Department of State.  The Secretary of State makes the ultimate decision on whether to surrender the Respondent.  18 U.S.C. § 3184, *et seq*.

The Ninth Circuit has held that the Court's role in an extradition proceeding is limited under §3184 to determining "whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge." *Prasoprat v. Benov*, 421 F.3d 1009, 1012 (9th Cir. 2005)(citing *Cornejo- Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir. 2000).  The Court "has no discretionary decision to make." *Id.*,

06mg1674

1   *citing Lopez-Smith v. Hood*, 121 F.3d at 1326. If the evidence is sufficient to sustain the charge, the

2   Court "is required to certify the individual as extraditable." *Id., citing Blaxland*, 323 F.3d at 1208. In

3   addition to these to factors, the Respondent challenges extradition on the basis of lapse of the statute of

4   limitations, that Respondent wasn't a fugitive, and various Constitutional challenges under the Forth

5   Amendment and Due Process Clause of the Fourteenth Amendment.

6        **1.    Whether the Crime is Extraditable**

7        In determining whether a crime is extraditable under a treaty, the Court may take judicial notice

8   of the existence of a treaty. *E.g., Jones v. United States*, 137 U.S. 202, 214 (1890); *United States v.*

9   *Rauscher*, 119 U.S. 407, 419 (1886); *United States v. Reynes*, 50 U.S. 127, 147-48 (1850); *Allen v.*

10   *Markham*, 156 F.2d 653, 663 (9th Cir. 1946).

11        Additionally, the Department of State's opinion in this regard is entitled to great weight and

12   deference from the Court. *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961)("While courts interpret

13   treaties for themselves, the meaning given them by the departments of government particularly charged

14   with their negotiation and enforcement is given great weight"); *Charlton v. Kelly*, 229 U.S. 447, 468

15   (1913)(stating that construction of a treaty by political departments of government is given great

16   weight; *see also Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997) (giving

17   deference to State Department's opinion that extradition treaty was in full force and effect).

18        When interpreting an extradition treaty, the Court must construe its provisions liberally, in a

19   manner favoring the obligation to surrender the fugitive to the requesting state. *Factor v.*

20   *Laubenheimer*, 290 U.S. 276, 293-94, 298, 303 (1933); *United States v. Wiebe*, 733 F.2d 549, 554 (8th

21   Cir. 1984)("extradition treaties are to be construed liberally to effect their purposes, i.e., the surrender of

22   fugitives"); *Cucuzella v. Keliikoa*, 638 F.2d 105, 107 n. 3 (9th Cir. 1981)("treaties should be construed

23   to enlarge the rights of the parties").

24        Moreover, the obligation to surrender the fugitive to be tried for alleged offenses "should be

25   construed more liberally than a criminal statute or the technical requirements of criminal procedure."

26   *Factor v. Laubenheimer*, 290 U.S. at 298. Accordingly, "form is not to be insisted upon beyond the

27

28

1    requirements of safety and justice"[6] and objections that "savor of technicality" do not find favor in

2    extradition proceedings.  *Bingham v. Bradley*, 241 U.S. 511, 517-18 (1916).

3         In determining whether a crime is covered by the treaty, the Court should look to the terms of the

4    treaty which create obligations between the parties to the treaty to surrender fugitives under particular

5    circumstances set forth in the treaty.  The treaty may specify that extradition may be had for particular

6    offenses that are listed in the treaty, for any serious offense that is punishable in both the requesting and

7    requested state, for some combination of those two categories, or for an even broader range of offenses.

8         Dual criminality is not a per se requirement for extradition; it need be found only if the treaty so

9    requires. *Factor v. Laubenheimer*, 290 U.S. 276 (1933); *In re Assarsson*, 635 F.2d 1237 (7th Cir. 1980).

10   If the treaty requires dual criminality, the Court should examine the facts and decide whether the

11   fugitive's conduct would be criminal under U.S. laws.  The Supreme Court noted that it is not necessary

12   that the crimes be identical, but only that the underlying acts be criminal in both countries:

13
14             The law does not require that the name by which the crime is described in
               the two countries shall be the same; nor that the scope of liability shall be
               coextensive, or, in other respects, the same in the two countries.  It is
15             enough if the particular act charged is criminal in both jurisdictions.
               *Collins v. Loisel*, 259 U.S. 309, 312 (1922); *Emami v. U.S. District Court*,
16             834 F.2d 1444, 1449-50 (9th Cir. 1987).

17        In comparing the foreign offense with the United States laws to decide the question of dual

18   criminality, the Court may consider federal law, the law of the State in which the hearing is held, and the

19   law of a preponderance of the States.  *Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981); see also

20   *Clarey v. Gregg*, 138 F.3d 764, 765-66 (9th Cir. 1998)("differences between statutes aimed at the same

21   category of conduct do not defeat dual criminality," and "elements of analogous offenses need not be

22   identical"); *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir. 1993)("dual criminality is satisfied

23   even though the names of the crimes and the required elements were different in the two countries");

24   *Bozilov v. Seifert*, 983 F.2d 140, 142-42 (9th Cir 1992)(no requirement of "an identical counterpart," so

25   long as acts constitute crime in both jurisdictions); *Matter of Extradition of Russell*, 789 F.2d 801,

26   803–4 (9th Cir. 1986) ("the crimes need not be identical").

27

28

_____

   [6] *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

                                        7                                    06mg1674

1    The Court's analysis of the question of dual criminality is subject to the general requirement that

2    it "must approach challenges to extradition with a view toward finding the offenses within the treaty."

3    *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981). Finally, as with other matters concerning the

4    interpretation of a treaty, the State Department's opinion on whether a particular crime is covered by the

5    treaty is entitled to weight and deference.  *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961); *Charlton*

6    *v. Kelly*, 229 U.S. 447, 468 (1913).

7    The Defendant reasserts the dual criminality arguments made during the first extradition hearing

8    in 06mg0603-AJB, that dual criminality does not exist between the fraud charges in Mexico and the

9    offense of fraud in the United States because the offense of fraud in Mexico does not require intent to

10   defraud for the purposes of financial gain as required under U.S. law.  However, as stated by the Court

11   in the previous extradition case, Defendant's alleged conduct, repeatedly deceiving elderly investors and

12   their families into believing that they would receive high rates of return from a non-existent bank before

13   Respondent left Mexican jurisdiction, is underlying conduct that would be punishable under U.S. law.

14   *See e.g., Emani v. U.S. District Court*, 834 F.2d 1444, 1449-50 (9th Cir. 1987)(rejecting argument that

15   health care fraud in Germany would not constitute fraud in the United State).  As such, the Court finds

16   Defendant's argument against dual criminality to be unpersuasive.

17        **2.    *Whether There is Probable Cause to Sustain the Charge***

18   After determining that the offense is extraditable under the treaty, the Court must look at whether

19   the evidence submitted in support of the charge for which the fugitive is wanted under the treaty is

20   sufficient to establish probable cause.  The standard of proof in extradition proceedings is that of

21   probable cause as defined in federal law.  The Supreme Court emphasized that "the function of the

22   committing magistrate is to determine whether there is competent evidence to justify holding the

23   accused to await trial, and not to determine whether evidence is sufficient to justify a conviction."

24   *Collins v. Loisel*, 259 U.S. 309, 316 (1922); *Sindona v. Grant*, 619 F.2d 167 (2nd Cir. 1980).

25   The Ninth Circuit has recognized a similar Supreme Court holding that the probable cause

26   inquiry in extradition cases is "whether there was any evidence warranting the finding that there was a

27   reasonable ground to believe the accused guilty."  *Mirchandani v. United States*, 836 F.2d 1223, 1226

28   (9th Cir. 1988)(quoting *Fernandez v. Phillipps*, 268 U.S. 311, 312 (1925)).  *See also Quinn v. Robinson*,

783 F.2d 776, 815 (9th Cir. 1986) (country requesting extradition "not required to produce all its evidence," and it is not the court's role to determine sufficiency of evidence to convict); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate judge's function "is not to decide guilt or innocense, but merely to determine whether there is 'competent' legal evidence which would justify his apprehension and commitment for trial" in U.S.).

Just as in determining whether an offense is covered by the treaty, in determining whether sufficient factual allegations have been made to justify extradition, the court must engage in a "liberal" reading of the supporting documents, in a manner favoring extradition. *Matter of Extradition of Manzi*, 888 F.2d 204 (1st Cir. 1989); *Brauch v. Raiche*, 618 F.2d 843, 847 (1st Cir. 1980).

In addition, many of the rights guaranteed by the Fourth, Fifth and Sixth Amendments have no application to extradition hearings. Consequently, no indictment is required and the fugitive has no right to confront the witnesses against him (if any are permitted), no right to a speedy hearing, and no right to claim a double jeopardy bar to prosecution. *E.g.*, *Brigham v. Bradley*, 241 U.S. 511, 517 (1916) (no right to confront witnesses); *Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002) (no 5th Amendment right against self-incrimination); *Jhirad v. Ferrandina*, 536 F.2d 478, 485 N.9 (2d Cir. 1976) (no 6th Amendment right to speedy trial); *Matter of Extradition of McMullen*, 989 F.2d 603, 612-13 (2d Cir. 1993) (no 5th Amendment protection against double jeopardy or *res judicata*); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (same); *Simmons v. Braun*, 627 F.2d 635, 636 (2d Cir. 1980) (no 4th Amendment exclusionary rule); *De Silva v. Di Leonardi*, 181 F.3d 865 (7th Cir. 1999) (no 6th Amendment right to counsel). *See generally*, *Neely v. Henkel*, 180 U.S. 109, 122 (1901) (extradition not criminal trial).

The Defendant contends that both of the Mexican criminal cases that form the basis of the extradition request fail to establish probable cause because they fail to present evidence that she deceived others for financial gain. *See* Defendant's Opposition at 8. The Defendant argues that while the complaints allege that the Defendant held a meeting with investors, this was only after the invest-ments had already been made upon solicitations by fellow Defendants Wetterweld and Lippert and after Wetterweld had disappeared. The Defendant contends that the purpose of the meeting was to tell investors that the monies already invested would be returned to them, not to encourage further

06mg1674

1   investment.  However, the Court finds Defendant's arguments unpersuasive in light of the fact that

2   several victims investments occurred after the disappearance of Defendants' alleged conspirators, Mr.

3   Wetterwald and Mr. Lippert.[7]  Defendant's contention is further belied by the findings of fact and

4   conclusions of law in the opinion of the  Second District Court in Jalisco, Mexico.  As such, the Court

5   finds ample probable cause to believe that the Defendant committed the charged offense.

6           ***3.        Defendant's Statute of Limitations Argument***

7           Defendant argues that she is not extraditable under the Treaty because her prosecution is barred

8   by lapse of time.  Article 7 of the Treaty state, "Extradition shall not be granted when the prosecution or

9   the enforcement of the penalty for the offense for which extradition has been sought has become barred

10  by lapse of time according to the laws of the requesting or requested party."  *See* Government's Exh. E.

11  As such, the prosecution of the Defendant must fall within the statute of limitations, according to the

12  laws of both Mexico and the United States.  *See eg., Clarey v. Gregg*, 138 F.3d 764, 766 (9th Cir. 1998).

13          ***A. The Statute of Limitations Under Mexican Law***

14          The statute of limitations in Mexico is set forth in chapters VI, VII and VIII of the Jalisco Code.

15  *See* Government's Exh. F.  Chapter VI of the Code, Article 18, states that the "[s]tatute of Limitations

16  extinguishes the criminal actions and the penalties imposed."  *Id.*  Article 79 states that the "[s]tatute of

17  limitations is a personal right: it only takes the simple passage of time so established by the law for

18  those criminal actions and penalties to end."  *Id.*  Chapter VII, Article 80 states that "the right of the

19  victim to file a complaint for a crime, whether the crime be continuous or not, or that it may only be

20  initiated by the complaint, shall be proscribed in one year counted form the day the persons offended to

21  file the complaint have knowledge of the crime and the offender . . ."  *Id.*  Chapter VIII governs the

22  statute of limitations for the criminal action itself and it is based on the mean of the minimum and

23  maximum custodial period, which is in turn based, in fraud cases such as the instant case, on the amount

24  of the alleged loss.  The amount of loss is calculated under Mexican law by determining the number of

25  days it would take to earn that amount of loss on minimum wage.  *Id.*  As set forth in exhibit 27 to the

26

27  _____

28          [7] In particular, Mr. And Mrs. Stevenson who invested $25,000.00 on August 11, 1999 and Mr.
    Smuk who invested $10,000.00 on January 11, 2000 and another $10,000 on February 3, 2000.  *See*
    Government's Memorandum of Law in Support of Mexico's Request for Extradition at 5.

06mg1674

1  Diplomatic Note, the statute of limitations for the crimes of fraud charged in the instant action would be

2  eight years and nine months.

3       While the Defendant admits that Chapter VIII is not implicated if statute of limitations

4  calculations in exhibit 27 of the Diplomatic Note are correct, Defendant contends that the one year

5  statute of limitations set forth in Chapter VII, Article 80 has lapsed since the Complainants filed the

6  Complaints more than one year after they had knowledge of the supposed crime.[8]  Defendant bases her

7  argument on the fact that none of the Complainants mention any contact with her after June of 2000 and

8  the first complaint was not filed until December of 2001.  As such, Defendant contends that the

9  complaints were taken in violation of the Article 80 statute of limitations, as such complaints alleging

10 criminal action would be extinguished under Articles 78 and 79 of Chapter VII.  See Government's Exh.

11 F and G.       Alternatively, the Government argues that the Mexican authorities extradition request

12 filed with this Court specifically states that the prosecution is well within the statute of limitations under

13 Mexican law.  The extradition request contains a certification, dated February 26, 2003, by the Secretary

14 of the Court for Criminal Matters, which states that "as of today's date the criminal action against . . .

15 Karin Elena Causbie Gullers . . . has not been proscribed, since a warrant for Arrest has been dictated

16 against them for the felony of fraud . . ."  The Government argues that if the Mexican Crimal Court has

17 determined the statute of limitations in this case to be eight years and nine months under Articles 81-86

18 of Chapter VIII of the Criminal Code of the State of Jalisco entitled, "Statute of Limitations of the

19 Criminal Action", Defendant's argument that the statute of limitations set forth under Chapter VII

20 dealing with the statute of limitations for a victim to file a complaint simply does not control under

21 Article 7 of the treaty.  The Court agrees, finding Defendant's argument unpersuasive in light of

22 Mexican Court's certified determination of the statute of limitations being eight years and nine months.

23                 **B.  *Statute of Limitations Under United States Law***

24       Title 18, U.S.C. § 3282(a) sets forth the requirement that for most noncapital crimes, a person

25 must be charged within five years.  As such, under U.S. law criminal charges would have to be brought

26 within five years from the date the offense was committed.  The five year period begins to run when all

27

28       [8] Respondent further states that it is their belief, according to Mexican counsel Jorge Robles, that Article 80 has been amended and now has a limitation of six months and such amendments to Mexican criminal codes apply retroactively when they favor the accused.

1  of the elements of the offense have been committed. *See United States v. Beardslee*, 197 F.3d 378, 385

2  (9th Cir. 1999)(citing *United States v. Drebin*, 557 F.2d 1316, 1333 (9th Cir. 1977)).

3    Defendant contends that all of the elements of the offense were completed by June of 2000 and

4  as such, prosecution would be barred under U.S. law if an indictment is not found or an information

5  consented to, within the five year period ending in June of 2005.  Defendant argues that the Mexican

6  arrest warrant issued on December 27, 2002, in Jalisco, Mexico, did not toll the statute of limitations

7  because the warrant was obtained by compiling ex parte hearsay requests is not analogous to an

8  indictment or information which would be required under U.S. law.  In support of her contention that the

9  Mexican arrest warrant would not be sufficient to toll the U.S. statute of limitations, the Defendant cites

10 three cases.[9]  However, the cases cited *Quinn*,[10] *Caplan*,[11] and *Theron*,[12] do not support Defendant's

11 contention.  *Quinn* discusses the applicability of the political offense exception to the extradition treaty

12 between the United States and Mexico never reaching the statute of limitations issue and *Caplan* and

13 *Theron* state, arguably in dicta, that the statute of limitations may be tolled by a foreign proceeding.  As

14 such, the Court finds Defendant's argument to be unpersuasive.

15    In response to Defendant's contention, the Government argues that the Defendant's suggestion

16 that Mexico must institute criminal proceedings in the same manner as the United States, that is with an

17 indictment, has not been adopted by any court.  The Government further argues that this Court should

18 not pass judgment on a foreign country's charging instrument when determining whether the charged

19 offense would have been time-barred under U.S. law.  *See Caplan v. Volkes*, 649 F.2d 1336 (9th Cir.

20 1981); Restatement (Third) of Foreign Relations Law § 476 (1987), comment (e)(stating "[f]or the

21 purposes of applying statutes of limitations to requests for extradition . . . the period is generally

22 calculated from the time of the alleged commission of the offense to the time of the warrant, arrest,

23 indictment or similar step in the requesting state . . .").  The Court agrees, finding the Mexican arrest

24

25    [9] Respondent cites *Quinn v. Robinson*, 783 F.2d 776, 816-17 (9th Cir. 1986); *Caplan v. Volkes*,
26 649 F.2d 1336 (9th Cir. 1981); and *Theron v. United States*, 832 F.2d 492 (9th Cir. 1987).

    [10] *Quinn v. Robinson*, 783 F.2d 776, 816-17 (9th Cir. 1986).
27
    [11] *Caplan v. Volkes*, 649 F.2d 1336 (9th Cir. 1981).
28
    [12] *Theron v. United States*, 832 F.2d 492 (9th Cir. 1987).

06mg1674

warrant sufficient even though not sworn and based on hearsay statements from complainants.  *See Emani v. U.S. District Court*, 834 F.2d 1444, 1448-49 (9th Cir. 1987)(*citing In Re Assarsson*, 635 F.2d 1237 (7th Cir. 1980).

### 4.    *Defendant's Constitutional Challenges to Extradition*

Defendant reasserts her argument in the previous extradition case (06mg0603-AJB) that Mexico's extradition request would violate her Constitutional rights.  Specifically, Defendant argued that she is entitled to a fair trial with the presumption of innocense which will not be afforded to her if extradited to Mexico.  However, the Court reasserts that questions concerning the judicial procedure in the requesting state and the treatment that might be accorded the fugitive after extradition are not proper matters for consideration by U.S. courts, according to what the Second Circuit recognized as "substantial authority."  *Ahmad v. Wigen*, 910 F.2d 1063, 1066-67 (2d Cir. 1990) (citing *Sindona v. Grant, 619 F.2d 167, 174 (2d Cir. 1980)*("the degree or risk to [appellant's] life from extradition is an issue that properly falls within the exclusive purview of the executive branch"), *Jhirad v. Ferrandina*, 536 F.2d 478 (2d Cir. 1976) ("[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation"), *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983), *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971), and *Matter of Extradition of Tang Yee Chun*, 674 F. Supp. 1058, 1068-69 (S.D.N.Y. 1987).

The Ninth Circuit has similarly recognized the rule of non-inquiry.  *See Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009 n.5 (9th Cir. 2000) (rule of non-inquiry usually requires extradition courts to refrain from inquiring into foreign justice systems); *Lopez-Smith v. Hood*, 121 F.3d at 1327 (courts generally refrain from examining penal systems of requesting nations).  As Justice Holmes said, "we are bound by the existence of an extradition treaty to assume that the trial will be fair."  *Glucksman v. Henkel*, 221 U.S. at 512.[13]

As such, this Court will not inquire as Defendant requests into whether or not Defendant will receive the same Constitutional protections during her prosecution for charges contain in the extradition

---

[13]  A caveat to the doctrine of non-inquiry can apply under circumstances-not present here – falling under the Torture Convention.  *See Cornejo-Barreto v. Seifert*, 218 F.3d 1004 (9th Cir. 2000) (regulations implementing Torture Convention).

1  request submitted by Mexico.  This Court is bound by the terms of the extradition treaty to assume that

2  the trial will be fair." *Glucksman v. Henkel*, 221 U.S. at 512.

3       **5.**     ***Respondent's Offerings of Evidence During the Hearing***

4       The scope of admissible evidence in an extradition hearing is guided by the distinction between

5  contradictory and explanatory evidence.[14]  *Republic of France v. Moghadam*, 617 F. Supp. 777 (N.D.

6  Cal. 1985).  While the Court accepted the statements submitted by Defendant during the hearing and

7  reviewed Defendant's argument in her brief, the Court will not weigh this evidence as it finds that it

8  does not negate the showing of probable cause made by the Mexico in the request for extradition.

9  *Garcia-Guillern v. United States*,  450 F.2d 1189, 1192 (5th Cir. 1971), *cert. denied*, 405 U.S. 989

10  (1972)(issues involving sufficiency of the evidence and guilt of the accused should and will ultimately

11  be resolved by the trial court).

12       <u>**Conclusion**</u>

13       Based on the foregoing, the Court finds that the elements for extradition have been met in this

14  case as the extradition request and supporting documents have been properly certified in accordance

15  with the extradition treaty between Mexico and the United States, the charged offense, fraud, is covered

16  by the treaty and there is dual criminality, probable cause exists to believe that the Defendant committed

17  the offense of fraud charged in Mexico's extradition request.

18  ///

19  ///

20  ///

21  ///

22

23       [14] The district court in *Matter of Sindona*, 450 F. Supp. 672 (S.D.N.Y. 1978), *aff'd.*, 619 F.2d
167 (2d Cir. 1980), discussed the distinction between contradictory and explanatory evidence, and cited

24  the established authority for the proposition that an extradition hearing should not be transformed into a
full trial on the merits:

25       The distinction between "contradictory evidence" and "explanatory
evidence" is difficult to articulate.  However, the purpose behind the rule

26       is reasonably clear.  In admitting "explanatory evidence," the intention is
to afford an accused person the opportunity to present reasonably clear-cut

27       proof which would be of limited scope and having some reasonable
chance of negating a showing of probable cause.  The scope of this

28       evidence is restricted to what is appropriate to an extradition hearing.  The
decisions are emphatic that the extraditee cannot be allowed to turn the
extradition hearing into a full trial on the merits.  450 F. Supp. 672 at 685.

06mg1674

As such, the Court will certify the above and all documents to the Department of State.  The Department of Justice shall prepare a certification consistent with this memorandum as required by 18 U.S.C. § 3184.

IT IS SO ORDERED.


DATED:  December 15, 2006

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

06mg1674